# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### ORLANDO DIVISION

FILED

2018 JAN 19 PM 3: 14

JOHN DOE, a minor, by his parents
and next friends, SUSAN AND JACK
DOE,

                    Plaintiff,

    v.

VOLUSIA COUNTY SCHOOL BOARD,

                    Defendant.

Civ. Action No. 6.18-cv-102-ORL-37-KRS
Judge _____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR DAMAGES

The plaintiff, JOHN DOE, a minor, by and through his parents and next friends SUSAN AND JACK DOE ("Plaintiff"), and his undersigned counsel, hereby sues Defendant, VOLUSIA COUNTY SCHOOL BOARD ("VCSB" or the "School Board"), and states as follows:

### INTRODUCTION

1.    Plaintiff John Doe ("John"), a fifteen-year-old boy, is a sophomore in high school in the Volusia County School District (the "District") in Volusia County, Florida.

2.    John, like many other children his age, loves reading (especially anything sports-related), playing basketball, watching ESPN, and playing video games.

3.    John is also transgender. In other words, although John was designated "female" on his birth certificate, he is male. John has experienced gender dysphoria (*i.e.*, feelings of profound distress caused by the incongruence between one's gender designated at birth and

1

one's gender identity) since early childhood, and became aware of his male gender identity when he was six years old.

4.      Since the age of seven, John has lived, and continues to live, as a boy in all aspects of his life.  Specifically, but without limitation, John legally changed his first name to one typically associated with males, uses and asks others to use male pronouns when referring to him, wears his clothing and hairstyles in a manner typical of other boys, uses the men's restroom in public venues, including restaurants and shopping centers, without encountering any problems, began hormone therapy while in middle school, underwent chest reconstruction surgery to masculinize his chest in 2017, and otherwise lives in accord with his male identity in every aspect of his life.

5.      Since beginning his transition at the start of his second-grade year, John has wanted nothing more than to live as a boy and to be afforded the same rights and treated the same as other boys in his class.

6.      However, despite being made aware that John is transgender as early as 2009, despite receiving written documentation from John's medical providers confirming his gender dysphoria diagnosis and advising of the significant risks to John's health and mental health if he were segregated and treated differently from the other boys in his class, and despite continuous pleas by John and his parents, Defendant VCSB, Superintendent James T. Russell, and their agents, employees, and representatives have refused to treat John the same as other boys, including by excluding him from using the boys' restrooms and locker room facilities at his school.  Instead, John is required to use specially-designated restrooms and changing facilities that isolate, humiliate, and stigmatize him.

4810-7337-3773.6

7. VCSB's discriminatory conduct conflicts with the recommendations of every major medical and mental health organization and treats John and other transgender students differently and unequally, simply because they are transgender.

8. VCSB's discriminatory conduct also directly conflicts with VCSB's policies prohibiting harassment and bullying of students based on a student's sex or gender identity. *See* VCSB Policy Number 509, *Prohibition Against Harassment,* https://www.boarddocs.com/fla/vcsfl/Board.nsf/files/8SDQ2L67298F/$file/509.pdf (last visited Jan. 16, 2018); VCSB Policy Number 525, *Policy Against Bullying and Harassment,* https://www.boarddocs.com/fla/vcsfl/Board.nsf/files/AGSM4P597252/$file/Policy%20525-%20Adopted%20December%2013%2C%202016.PDF (last visited Jan. 16, 2018).

9. Through these actions, Defendant has discriminated against John on the basis of sex, including on the basis of his gender identity, transgender status, and nonconformity to sex-based stereotypes, in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*, ("Title IX") and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Defendant's actions have denied John full and equal access to the District's education program and activities on the basis of sex.

10. Behind these unlawful and discriminatory practices is a child who is suffering. VCSB's conduct, which ostracizes John from the other boys in his class simply because he is transgender, causes John overwhelming distress and anxiety. This distress and anxiety has gone so far as to manifest itself in a condition called trichotillomania, which causes John to pull out his own eyelashes. Due to the fear and anxiety John experiences by being forced to use designated single-user restrooms that no other boy in his class is required to use, John restricts his fluid intake while at school in an attempt to avoid having to using the restroom altogether, which

3

exposes John to health risks including dehydration, urinary tract infections, and other consequences such as stress and difficulty focusing on classwork.

11.     John seeks a declaratory judgment that his unequal treatment, including his exclusion from the boys' restrooms and locker rooms by VCSB, violates Title IX and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. John also seeks injunctive relief enjoining VCSB from singling him out for differential treatment because of his transgender identity, including by denying him equal access to the boys' restroom and locker rooms, and damages against VCSB for the violation of John's rights under Title IX and the Fourteenth Amendment to the U.S. Constitution.

PARTIES

12.     Plaintiff John Doe is a 15-year-old boy who resides in Volusia County, Florida and is a student in a public high school in the Volusia County School District.  He began his sophomore year on August 15, 2017.  As a student enrolled in a high school in the District, John is subject to the policies of VCSB, including VCSB's policy, custom, or usage of barring transgender students from using the same restrooms and locker rooms as their peers.

13.     Susan and Jack Doe are John's parents.  The Doe family resides in Volusia County, Florida.  John brings this action pursuant to Federal Rule of Civil Procedure 17(c) by and through his next friends and parents, Susan and Jack Doe.

14.     VCSB, in accordance with the provisions of section 4(b) of Art. IX of the State Constitution and Fla. Stat. § 1001.32(2), operates, controls, and supervises all public schools in the District, including the elementary school, middle school and high school attended by John. The VCSB is empowered to determine the policies necessary for the effective operation of the school system, including the policy, custom, or usage challenged here that bars transgender

boys from using the same restrooms and locker rooms as other boys.  As a political subdivision

of the State of Florida, VCSB is subject to civil suits pursuant to Fla. Stat. § 1001.41(4) and is a

"person" acting under color of state law within the meaning of 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

15.     This action arises under 42 U.S.C. § 1983 to redress the deprivation under

color of state law of rights secured by the United States Constitution and under Title IX.

16.     This Court has original jurisdiction over the subject matter of this action

pursuant to 28 U.S.C. § 1331 because the matters in controversy arise under the

Constitution and laws of the United States; and pursuant to 28 U.S.C. §1343(a)(3) and (4)

because the action is brought to redress deprivations, under color of state authority, of

rights, privileges, and immunities secured by the United States Constitution and seeks to

secure damages and equitable relief under an Act of Congress, specifically 42 U.S.C. §

1983, which provides a cause of action for the protection of civil rights.

17.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2) and

Local Rule 1.02(c) because VCSB resides within this judicial district and division, and

within the State of Florida; and because a substantial part of the events that gave rise to

the Plaintiff's claims took place (or will continue to take place due to VCSB's ongoing

discriminatory conduct) within this judicial district and division.

18.     This Court has the authority to enter a declaratory judgment and to provide

permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil

Procedure, and 28 U.S.C. §§ 2201 and 2202.

19.     This Court has personal jurisdiction over Defendant because it is domiciled

in Florida.

4810-7337-3773.6

## FACTUAL ALLEGATIONS

### *Gender Identity and Gender Dysphoria*

20.     Everyone has a gender identity; it is an established medical concept, referring to a person's deeply felt, inherent sense of being male or female.

21.     Gender identity is innate, and the medical profession recognizes that efforts to change a person's gender identity are ineffective, unethical, and harmful.

22.     At birth, infants are generally identified as male or female based solely on a cursory observation of their external genitalia.  This classification becomes the person's birth-assigned gender.  For the great majority of people, that initial identification is accurate; for the small percentage of people who are transgender, however, that initial identification is not accurate and does not match the person's actual gender.

23.     Typically, children become aware of their gender identity as early as two or three years of age.

24.     The phrase "transgender" refers to an individual whose gender identity does not align with the sex they were assigned at birth.  Thus, a boy who is transgender is a person who was identified as female at birth but is in fact a boy.  A girl who is transgender is a person who was identified as a boy at birth but is in fact a girl.

25.     Gender identity and transgender status are inextricably linked to one's sex and are sex-related characteristics.

26.     Gender dysphoria is a serious medical condition recognized by the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, 5th edition ("DSM-5"), and by other leading medical and mental health professional groups, including the American Medical Association and the American Psychological Association.

6

27.     Gender dysphoria refers to the severe and unremitting emotional pain that can result from the incongruence between a person's gender identity and their assigned gender at birth. If left untreated, gender dysphoria may result in profound psychological distress, anxiety, depression, and even self-harm or suicidal ideation.

28.     Although gender dysphoria is a serious medical condition, being transgender, in itself, is not a mental disorder and "implies no impairment in judgment, stability, reliability, or general social or vocational capabilities." Am. Psychiatric Ass'n, *Position Statement on Discrimination Against Transgender & Gender Variant Individuals* (2012), at https://goo.gl/iXBM0S.

29.     Gender dysphoria is a highly treatable medical condition. As with most medical conditions, healthcare providers follow a well-established standard of care when working with patients with gender dysphoria. Those standards have been set by the World Professional Association for Transgender Health ("WPATH"), and its predecessors, for over five decades. WPATH is an international, multidisciplinary, professional association of medical providers, mental health providers, researchers, and others, with a mission of promoting evidence-based care and research for transgender health, including the treatment of gender dysphoria. WPATH published the seventh and most recent edition of the Standards of Care in 2011.

30.     Building on those standards and incorporating the most current research and clinical experience, the Endocrine Society updated the Endocrine Treatment of Gender-Dysphoric/Gender-Incongruent Persons: An Endocrine Society Clinical Practice Guideline in September 2017. Those guidelines reaffirm the WPATH Standards of Care and offer medical providers practical guidance on providing transition-related care to patients with gender dysphoria.

7

31.     Consistent with the WPATH Standards of Care, treatment for gender dysphoria consists of the person living in accordance with their gender identity, which includes, in most cases, treatments that alter the person's physical characteristics to reflect their gender identity. The purpose of the treatments is to alleviate gender dysphoria and to enable a transgender person to live consistently with their gender identity and to be seen by others in a way that reflects their true gender.

32.     A key stage in that process is a "social transition," in which the individual lives in accordance with their gender identity in all aspects of life. A social transition, though specific to each person, typically includes adopting a new first name, using and asking others to use pronouns reflecting the individual's true gender, wearing clothing typically associated with that gender, and using sex-specific facilities corresponding to that gender. Failing to recognize or respect the gender of a person who is transgender is contrary to established medical protocols and can exacerbate an individual's symptoms of gender dysphoria.

33.     A critical component to a social transition is that a boy who is transgender be recognized as a boy and treated the same as all other boys by parents, teachers, classmates, and others in the community. This includes being referred to exclusively with the student's new name and male pronouns, being permitted to use boys' restrooms and locker rooms like all other male students, and having the right to keep information about the student's transgender status private.

34.     Medical treatments, such as hormone therapy or surgical procedures, may also be undertaken to facilitate transition and alleviate dysphoria, but are generally not provided until after a transgender young person has entered puberty. With hormone therapy, transgender people develop physical sex characteristics typical of their gender identity—not their assigned

8

gender at birth.  Hormone therapy affects bone and muscle structure, alters the appearance of a

person's genitals, and produces secondary sex characteristics such as facial and body hair in boys

and breasts in girls.  Under widely accepted standards of care developed by WPATH, genital

surgery is not recommended for minors, but boys who are transgender may undergo medically

necessary chest-reconstruction surgery.

35.     When and whether to undergo those specific medical treatments is a decision that

transgender people make in consultation with qualified healthcare providers.

36.     Under the WPATH Standards of Care, living full-time in accordance with one's

gender identity in all aspects of life for at least one year is a prerequisite for additional medical

interventions such as hormone therapy and surgeries.

37.     Singling out a boy who is transgender and treating him differently than other boys

communicates the stigmatizing message to that student and the entire school community that he

should not be recognized or treated as a boy, simply because he is transgender.  This undermines

a transgender person's social transition and exposes them to the risk of renewed and heightened

symptoms of gender dysphoria such as anxiety and depression.  It also frequently leads students

who are transgender to miss class time, avoid gym class, and avoid using school restrooms

altogether, often resulting in adverse physical health consequences such as urinary tract

infections, kidney infections, and dehydration, and other consequences such as stress and

difficulty focusing on classwork.

### *Plaintiff's Background*

38.     John has been a student in the District's schools since kindergarten.  John is

an avid reader and loves sports.  Although John previously enjoyed schoolwork, the

9

4810-7337-3773 6

discriminatory treatment he has experienced in school has caused him to disengage, which is affecting his academic performance.

39.     John is a boy.  He is also transgender.  He was identified as "female" on his birth certificate.  By first grade, he knew that he is a boy and experienced profound discomfort when others assumed he was a girl.  With the support of his family, he cut his hair short, began wearing more traditionally masculine clothing, and began to go by a typically masculine name and masculine pronouns.

40.     In first grade, John began seeing a therapist.  After several months of evaluating John, the therapist diagnosed John with gender dysphoria.

41.     By the time John began second grade, he was living as a boy for all purposes.

42.     As a result of these changes, John's symptoms of discomfort and unhappiness decreased.  He felt more comfortable at school and was excited about participating in activities and interacting with other people.

43.     John has undertaken his gender transition under the guidance and care of therapists and medical doctors.  In third grade, John legally changed his name, in middle school John began hormone replacement therapy, and last year John underwent chest-reconstruction surgery to masculinize his chest.  All of these procedures were undertaken under the guidance of his endocrinologist and with the support of his pediatrician.

44.     Apart from VCSB's discriminatory treatment of John, John is accepted as a boy by other students and teachers.  His physical appearance is similar to that of other boys.

### *VCSB's Continued Refusal to Permit Plaintiff Access to Restrooms Consistent with his Gender Identity*

45.     From first through fifth grade, John attended an elementary school in the Volusia County School District.

46.     During the summer before second grade, John and his parents informed VCSB and his elementary school that John is a transgender boy and requested that staff and others refer to John by his chosen name and use male pronouns.  John and his parents also requested that John be treated the same as other boys at school, including being permitted to use the boys' restrooms.

47.     Although VCSB and school personnel agreed to refer to John by his chosen name and with male pronouns, VCSB and the school categorically prohibited John from using the boys' restrooms at the school.

48.     During his tenure in elementary school, John's classrooms were equipped with single-user restrooms, which alleviated some of the stigma of being excluded from the boys' restroom.  However, John still faced a predicament during recess and lunch when the only restrooms available to students were communal restrooms segregated by gender.  Rather than treat John like other boys, VCSB and the school directed him to use a single-user restroom in the nurse's office.

49.     Every day before lunch, John's teacher walked his class to the lunchroom.  On the way to the lunchroom, the teacher would stop at the sex-separated communal restrooms, at which point the children were supposed to use the restrooms prior to proceeding to lunch.

50.     In an attempt to alleviate the humiliation that John would endure as a result of his classmates, who knew John as a boy, watching him enter the girls' restroom, John's teacher would send John on invented errands so that John could instead use the restroom located in the nurse's office, out of sight of the other students.  However, these actions became yet another source of great distress for John.  These daily "errands" drew unnecessary and unwanted attention to John, and led his classmates to question why he was always the one selected to run

errands. As a result of this daily stigmatizing and discriminatory treatment, John became

anxious and upset about being singled out and came to dread lunchtime at school.

51.     John's mounting psychological distress caused John to begin pulling out his

eyelashes, a medical condition referred to as trichotillomania.

52.     From sixth through eighth grade (2013-2016), John attended middle school in

the Volusia County School District. At the end of fifth grade, in 2013, Mrs. Doe emailed

VCSB's area superintendent (now Superintendent) to ask if John could use the boys' restroom.

Her request was denied, and she was informed that if John was caught using the boys' restroom,

he would be disciplined. This was reiterated to John's parents during an in-person meeting with

the middle school principal.

53.     Instead, John was only permitted to use either the single-user restroom located

in the school's front office or a "Porta Potty" which was not functional until John's second

year at the middle school.

54.     Neither the restroom in the front office nor the "Porta Potty" were located in

any of the buildings where John's classes met. The location of the front office restroom and the

"Porta Potty" were much farther away than the communal restrooms, which John was

prohibited from using, and which were conveniently located in each of the buildings where John

had a class. This placed an added burden on John that no other student at the school was forced

to bear.

55.     John was deeply distressed by the prospect of being forced to use the restroom

in the front office or the "Porta Potty" because these options segregated him from the other

boys in his class and further alienated and stigmatized him for being transgender. Because of

his distress and anxiety, John would often restrict his fluid intake in an attempt to avoid having to using the restroom while at school altogether.

56.     Upon beginning his ninth-grade year in high school in September 2016, John and his parents once again requested that John be allowed to use the boys' restroom. Despite their pleas, VCSB continues its discriminatory conduct and excludes John from the boys' restroom, causing him significant harm.

57.     John only has access to one single-user restroom located in the media center.

58.     Although John is permitted to use other single-user restrooms on campus, all single-user restrooms, except the one located in the media center, remain locked at all times. In order to use these restrooms, John is forced to suffer the indignity and humiliation of seeking out an administrator and asking the administrator to unlock the doors so that he can use the restroom.

59.     The restroom in the media center is not one typically used by students. In fact, when John first began attending high school, there was a sign posted outside the media center restroom clearly stating that students were not allowed to use that restroom. Thus, at all times when that sign was present, John suffered immense stress and anxiety over the questions he faced from students who wondered why he was using a restroom no other student was allowed to use. It was not until Mrs. Doe lodged a complaint with the school that the sign was eventually removed.

60.     Even after the sign was removed, using the restroom in the media center continued to be problematic for John. Specifically, the restroom in the media center is located inside a classroom-like area where groups of students are normally congregated throughout the

day. This further exacerbates John's stress and anxiety as it is difficult for John to enter that restroom without being clearly observed by a number of students.

61.    These restroom options available to John in high school pose the same problems John faced in middle school – they draw attention to John and ostracize and segregate him from the other boys in his class.

62.    The discriminatory treatment that John suffers in high school causes John a great deal of anxiety and distress, which exacerbates his gender dysphoria.

### VCSB's Continual Refusal to Permit Plaintiff Access to Locker Rooms Consistent with His Gender Identity

63.    John's middle school classmates began taking gym classes in the sixth grade. Before each gym class begins, all of the boys change into their gym clothes in the boys' locker room. After gym class ends, they change back out of their gym clothes in the locker room.

64.    At the start of his sixth-grade year, John and his parents requested permission from VCSB and the School for John to use the boys' locker room. That request was denied.

65.    Even though John loves sports and looked forward to taking gym class, he chose not to take gym during his sixth-grade year due to VCSB prohibiting him from changing in the boys' locker room.

66.    At the start of his seventh-grade year and continuing through his eighth-grade year, John took gym, but pursuant to VCSB's discriminatory conduct, he was relegated to changing in the coach's office, which was a separate enclosed room located inside the boys' locker room. As a result, John was forced to deal with a barrage of questions from his classmates, asking why he was changing in a different room away from the rest of the boys. John would try to create excuses as best as he could, but suffered a great deal of mental

distress because he was being singled out by VCSB's conduct, a fact that was exacerbated by the unwanted and negative attention he was receiving.

67.     During his freshman year in high school, where John was once again required to take gym classes, VCSB continued to prohibit John from changing in the boys' locker room.

68.     Initially, the school directed John to change in the coach's office, which has a large window facing into the boys' locker room. The presence of this window spotlighted for the other boys that John was changing in a separate area from them. Even if John's peers did not see him through the window, the other boys noticed and questioned him about changing in a separate area. This arrangement caused John significant anxiety and distress.

69.     After John and his parents objected to John changing in the coach's office, the school directed John to take his gym classes online, which required him to go to a separate classroom and work on a computer – completely missing the physical activity and team-building with classmates that are vital components of physical education.

70.     Aside from taking his gym class online, John's only option was to change in the media center, which was located in a separate building from the gym and caused John to be routinely tardy to class. Although Mrs. Doe eventually convinced John's gym teacher to excuse the times John had been marked tardy, John's gym teacher did not excuse various other times when John refused to change into gym clothes at all owing to the embarrassment and humiliation John felt at having to change his clothes in the media center away from all the other boys. These circumstances greatly contributed to John finishing the year with a "D" in gym class.

4810-7337-3773.6

71.     John loves sports, and wants to try out for his high school's boys' basketball team. However, each time, the stigma and humiliation of not being allowed to change in the boys' locker room with his teammates keeps John from trying out for the team.

72.     All three of these options further stigmatized and ostracized John from his other male classmates, and exacerbated the symptoms of his gender dysphoria.

## INJURY TO PLAINTIFF

73.     Through Defendant VCSB's actions described above, Defendant has injured and is continuing to injure Plaintiff.

74.     VCSB has denied John full and equal access to the District's education programs and activities by denying him the full and equal access to student restrooms and locker rooms and to physical education class.

75.     John has experienced and continues to experience the harmful effects of being segregated from, and treated differently than, his male classmates at school, including lowered self-esteem, embarrassment, social isolation, and stigma, as well as heightened symptoms of gender dysphoria, including depression and anxiety. When school administrators excluded him from the boys' restrooms and locker rooms, and otherwise undermined his male identity and singled him out as different from all other boys, John felt humiliated, deeply hurt, and disrespected.

76.     As a direct and continuing result of VCSB's discriminatory actions, John has suffered increased and continuing emotional distress over the last several years. He has experienced escalating symptoms of depression and anxiety, including trichotillomania, and his self-esteem has suffered as a result of the discrimination he has experienced at school. He has also been excluded from equal participation in physical education classes.

4810-7337-3773.7

77.     VCSB's discriminatory actions, and John's subsequent need to limit his fluid intake while at school, has affected his academic performance and denied him access to his education.

78.     All of the above discriminatory treatment has undermined the efficacy of the social transition component of his gender transition and heightened his symptoms of gender dysphoria.

79.     If VCSB refuses to treat John the same as other boys, including granting him access to boys' restrooms and locker rooms, he will likely experience the same social stigma, emotional distress, academic harm, and detrimental impediments to his gender transition resulting from Defendant's conduct that he has experienced during the last several years.

**CLAIMS FOR RELIEF**

**COUNT I**

**Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.***

80.     Plaintiff realleges and incorporates the facts and allegations contained in paragraphs 1 through 79 as fully set forth herein.

81.     Under Title IX and its implementing regulations, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a); *see also* 34 C.F.R. § 106.31 (Department of Education Title IX regulations); 7 C.F.R. § 15a.31 (Department of Agriculture Title IX regulations); 45 C.F.R. § 86.31 (Department of Health and Human Services Title IX regulations).

82.     Defendant VCSB is a recipient of federal financial assistance from the United States Department of Education, and is therefore subject to Title IX.

4810-7337-3773.6

83.     Since at least 2009, and continuing to the present day, Defendant VCSB has maintained a policy of singling out transgender students for unequal treatment, including by prohibiting transgender boys from using the same restrooms and locker rooms used by other boys, forcing transgender students to use inferior and separate facilities, and subjecting transgender students to stigmatizing treatment that marks them as different.

84.     This policy discriminates against transgender students, including John, based on sex, including his gender identity, transgender status, and nonconformity to sex-based stereotypes.

85.     By adopting and enforcing this policy and practice, VCSB has discriminated, and continues to discriminate, against John in his enjoyment of the District's education program and activities and has denied, and continues to deny, John the full and equal participation in, benefits of, and right to be free from sex discrimination in the educational opportunities offered by the District. Defendant's enforcement of that policy and practice harms John because he is transgender by stigmatizing him and treating him differently than other boys.

86.     Plaintiff has been, and continues to be, injured by Defendant's discriminatory conduct and has suffered damages as a result.

## COUNT II

### Violation of 42 U.S.C. § 1983 Based on Deprivation of Plaintiff's Rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution

87.     Plaintiff realleges and incorporates the facts and allegations contained in paragraphs 1 through 79 as fully set forth herein.

88.     Defendant VCSB is a person acting under color of state law for purposes of 42 U.S.C. § 1983.

4810-7337-3773 6

89.     Defendant is the final policy maker for all schools within the Volusia County School District.

90.     The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall deny to any person within its jurisdiction the equal protection of the laws.

91.     Defendant VCSB's policy and practice discriminates against John based on his sex and transgender status, without lawful justification, in violation of the Equal Protection Clause.

92.     Under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, discrimination based on transgender status is presumptively unconstitutional and subject to strict, or at least heightened scrutiny.  The Defendant's actions lack even a rational basis, are arbitrary, and cannot be justified by sufficient government interests.

93.     Plaintiff has been, and continues to be, injured by Defendant's discriminatory conduct and has suffered damages as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff John Doe, by and through his parents and next friends, Susan and Jack Doe, requests that this Court:

(a)     enter a declaratory judgment that Defendant VCSB's actions complained of herein violate Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

(b)     issue permanent injunctions (i) directing Defendant to provide Plaintiff access to male-designated restrooms and locker rooms at school, and otherwise to treat him as a boy in all respects for the remainder of his time as a student in Defendant's schools or until resolution of

4810-7337-3773.6

this lawsuit, whichever is later; (ii) restraining Defendant, its agents, employees, representatives, and successors, and any other person acting directly or indirectly with Defendant, from adopting, implementing, or enforcing any policy or practice at the school or District level that treats transgender students differently from their similarly situated peers (*i.e.*, treating transgender boys differently from other boys and transgender girls differently from other girls); (iii) directing Defendant to clarify that the District's existing policies prohibiting discrimination on the basis of sex apply to discrimination based on gender identity, transgender status, and nonconformity to sex- and gender-based stereotypes; (iv) ordering Defendant to provide training to all district-level and school-based administrators in the Volusia County School District on their obligations under Title IX and the Equal Protection Clause regarding the nondiscriminatory treatment of transgender and gender nonconforming students; and (v) ensuring that all district-level and school-based administrators responsible for enforcing Title IX, including Defendant's designated Title IX coordinator(s), are aware of the correct and proper application of Title IX to transgender and gender nonconforming students;

(c) award damages to Plaintiff in an amount determined by the Court;

(d) award Plaintiff his costs, expenses, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and other applicable laws; and

(e) order such other relief as this Court deems appropriate, just, and proper.

Dated: January 19, 2018

Respectfully submitted,

s/ Lauren Valiente

Lauren L. Valiente, Trial Counsel
Florida Bar No. 034775
Email: lvaliente@foley.com
FOLEY & LARDNER LLP

4810-7337-3773.6

100 N. Tampa St., Suite 2700
Tampa, FL  33602
Telephone:  813.229.2300
Facsimile:  813.221.4210

Christina M. Kennedy
Florida Bar No. 58242
Email: ckennedy@foley.com
Jessica E. Joseph
Florida Bar No. 99483
Email: jjoseph@foley.com
FOLEY & LARDNER LLP
111 North Orange Avenue, Suite 1800
Orlando, FL  32801-2386
Telephone:  407.423.7656
Facsimile:  407.648.1743

Amy Whelan*
awhelan@nclrights.org
Asaf Orr*
aorr@nclrights.org
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street, Suite 370
San Francisco, CA 94102
Telephone:  415.392.6257
Facsimile:  415.392.8442

*Attorneys for Plaintiff*

*\* Pro hac vice motion forthcoming*

4810-7337-3773.6